[No. 11395. Department Two. November 29, 1913.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN M. KLINKENBERG, *Appellant*.[1]

LARCENY—PROPERTY SUBJECT—LAND — STATUTES — CONSTRUCTION. The crimes of false pretenses and larceny having been considered largely analogous, and confined to personal property, land is not the subject of larceny, as defined by Rem. & Bal. Code, § 2601, providing that any person who obtains the possession of or title to any property by color or aid of any order for the payment of money, check or draft not authorized by the drawer, or by color or aid of any fraudulent or false representation, token, writing, or by any trick . . . . steals such property and shall be guilty of larceny.

SAME. The rule is not affected by Rem. & Bal. Code, § 2303, providing that the term "property" in the criminal code shall in-

[1]Reported in 136 Pac. 692.

clude both real and personal property,. save when otherwise clearly apparent from the context; since it is clear from the context of § 2601 that personal property only was contemplated; nor by the word "title," which is used in connection with personal as well as real property.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered April 9, 1913, upon a trial and conviction of obtaining money upon false pretenses. Reversed.

*Marquis & Shields* and *H. F. Norris* (*T. W. Hammond*, on the brief), for appellant.

*Lorenzo Dow* and *W. D. Askren*, for respondent.

PARKER, J.—The defendant, John M. Klinkenberg, was charged by information, filed in the superior court for Pierce county, with having, by false and fraudulent representations, obtained from Michael Meier and wife a conveyance and transfer of certain land owned by them situated in Pierce county. Demurrer was interposed on behalf of the defendant upon the ground, among others, "that said information does not set forth any crime under the laws of the state of Washington." The demurrer was, by the trial court, overruled, and a trial followed, resulting in verdict and judgment of conviction against the plaintiff, from which he has appealed to this court. The only question we find it necessary to notice is whether land is such property as may become the subject of the offense sought to be charged against the appellant.

The prosecuting attorney proceeds upon the theory that appellant has been properly charged with and convicted of the crime of larceny, as defined by Rem. & Bal. Code, § 2601 (P. C. 135 § 695), reading, so far as we need here notice its provisions, as follows:

"Every person who, with intent to deprive or defraud the owner thereof—

"(1)    Shall take, lead or drive away the property of another; or

"(2)    Shall obtain from the owner or another the possession of or title to any property by color or aid of any order

for the payment or delivery of property or money or any check or draft, knowing that the maker or drawer of such order, check or draft was not authorized or entitled to make or draw the same, or by color or aid of any fraudulent or false representation, personation or pretense or by any false token or writing or by any trick, device, bunco game or fortune-telling; . . . Steals such property and shall be guilty of larceny."

The crimes of false pretenses and larceny have always been considered as largely analogous, and having reference to the wrongful obtaining of personal property, only, of another. This analogy obtains even where the crimes are defined by statute using the word "property" in a seeming very broad sense, if the word be viewed apart from the history of the law. of those crimes. The statute above quoted declares that, where a person obtains the property of another by any unlawful means therein specified, he thereby "steals such property, and shall be guilty of larceny." This suggests the thought that the word "property" as there used in defining the offense, means such property as has always been understood to be the subject of larceny and false pretenses, the latter of which we have noticed is analogous to larceny. The unqualified use of the word "property" in describing what may be stolen or obtained by false pretenses from another, so as to incur criminal liability, viewed in the light of the history of those crimes, both common law and statutory, it seems to us, falls short of conveying the idea that land may be so obtained, and criminal liability flow therefrom. Clearly, under the common law, land was not subject to larceny. 25 Cyc. 12, 15. Nor has there come to our notice the holding of any court to the effect that the crime of false pretenses, which is apparently little else than a statutory expansion of the crime of larceny, renders criminally liable one who, by false pretenses, procures a conveyance of land from its owner. In *People v. Cummings*, 114 Cal. 437, 46 Pac. 284, substantially the same question as here presented was learnedly discussed by Justice Van Fleet, speaking for the court as follows:

"In their origin both the common law and statutory of-
fenses were undoubtedly designed and aimed solely at pro-
tecting personal property, and in aid of the laws against lar-
ceny and theft.   Indeed, they appear to have sprung into be-
ing largely by reason of certain defects in the application
of the laws against larceny.   Among the reasons stated in the
statute (33 Henry VIII) for enlarging the offense of cheat-
ing are that 'many light and evil-disposed persons, not mind-
ing to get their living by truth, etc., but compassing and de-
vising daily how they may unlawfully obtain and get into
their hands and possession goods, chattels, and jewels of other
persons for the maintenance of their unthrifty living; and also
knowing that if they came to any of the same goods, chattels,
and jewels by *stealth,* then they, being thereof lawfully con-
victed, etc., shall die therefore—have now of late falsely and
deceitfully contrived, devised, and imagined *privy tokens and
counterfeit letters* in other men's names, unto divers persons
their special friends and acquaintances, for the obtaining of
money, goods, chattels and jewels of the same persons, their
friends and acquaintances; by color whereof the said light
and evil-disposed persons have deceitfully and unlawfully ob-
tained and gotten great substances of money, goods, chattels
and jewels into their hands and possession, contrary to right
and conscience,' etc.; and in one of the early statutes relating
to false pretenses it is recited that whereas, 'a failure of justice
frequently arises from the subtle distinction between larceny
and fraud,' etc.—one of which distinctions being that when
property was obtained by consent of the owner intending to
part with the title, although by the grossest fraud, it would
not constitute larceny.   And the offense of false pretenses
under the English statutes has always been construed as
largely analogous to and closely bordering upon that of lar-
ceny, and as applying only to personal property which was
capable of manual delivery, and the subject of the latter of-
fense; and has always been punishable in much the same man-
ner as larceny.   Real property under the English law was
never the subject of the offense, either of cheating or of false
pretenses.   Being incapable of larcenous asportation, it was
not regarded as requiring at the hands of the criminal law
the same protection as personalty.   Since it could not be
carried away and dissipated like chattels, although a man
might be deprived of his landed estate by means of fraudulent

practices and devices, yet the property was bound to remain stationary and accessible to the reach of the law, and he was relegated to the civil courts for his redress of the wrong.

"Our American statutes upon the subject have all followed more or less closely those of England. As indicated, there are slight differences in language, but in substantive purpose and effect they are the same. Some, instead of employing the specific terminology of the English statutes in designating the character of the property made the subject of the offense, have used more general and perhaps more comprehensive terms, such, for instance, as those found in the provision of our code above quoted. In their interpretation, however, of the purpose and effect of these statutes, the American courts, by reason no doubt of the origin of the offense, and in obedience to a well established rule of statutory construction, have closely followed in a general way that of the English courts, and the statutes of the various states, however general their terms, have been uniformly held to apply only to personal property of a larcenous nature . . . In no case, so far as an extended research discloses, has the offense every been held to include transactions in land or real estate."

The property specified in the statute there involved was "money or property" and the statute provided that the punishment should be "as for larceny." These views find support in *State v. Eno*, 131 Iowa 619, 109 N. W. 119; *Commonwealth v. Woodrun*, 4 Clark (Penn.) 207; and *State v. Burrows*, 33 N. C. 477. There has come to our notice the case of *Morse v. State*, 9 Ga. App. 424, wherein the transfer of a leasehold interest, together with a manufacturing plant situated thereon, evidently including personal property used in connection therewith, was obtained by false pretenses, and it was held by the court that criminal liability flowed therefrom. A critical reading of the decision will show that the holding rested upon the theory that the property so obtained was personal property, particular reliance apparently being placed upon the fact that there was personal property aside from the leasehold interest, although that was also regarded as personal property. This decision is not in conflict with the conclusion we have here reached, though it comes the near-

est to sustaining the prosecution's contention of any authority coming to our notice. Indeed, its reasoning supports the views we here express.

Our attention is called to Rem. & Bal. Code, § 2303 (P. C. 135 § 101), defining various terms used in the criminal code of 1909, in which is found the definition of the crime as above quoted. That section, among other things, provides: "In construing the provisions of this act, save when otherwise plainly declared or clearly apparent from the context, the following rules shall be observed: . . . (9) the word 'property' shall include both real and personal property." We think enough has already been said by us to show that it is "clearly apparent from the context" of § 2601 above quoted, defining the crime here involved, that the word "property" as there used does not include land or real property. Our attention is also called to the word "title" used in connection with the word "property" in the definition of the crime in § 2601, from which it is argued that this suggests the thought of real property. The word "title" is a term indicating the foundation of ownership of personal as well as real property, though probably used somewhat more frequently in connection with real property. 32 Cyc. 678. The idea of larceny of land being so foreign to all previous conceptions of that crime or the analogous crime of false pretenses, we are constrained to hold that the legislature did not intend by this statute to bring land within its provisions.

The judgment is reversed, with directions to dismiss the action.

CROW, C. J., FULLERTON, MORRIS, and MOUNT, JJ., concur.