14759

STATE v. COLLINS

(199 S. E., 303)

*Mr. W. B. Martin,* for appellant,

*Mr. A. J. Hydrick,* Solicitor, for the State.

October 27, 1938.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The appellant was tried and convicted in the Court of General Sessions for Orangeburg County upon an indict-

ment which charged him in the first count with grand larceny, to wit, the taking and carrying away of certain timber, the property of Mrs. Evans and her son; and in the second count with malicious injury to the same property.

From the sentence imposed, the defendant appeals upon several exceptions, all of which may be considered under these heads:

May one be convicted of larceny of trees unless the evidence shows beyond a reasonable doubt that the severance of the trees from the soil and the asportation thereof were separate and distinct occurrences, and not one continuous incident?

Has the State of South Carolina, by statute, abrogated the common law rule that trees, being essentially a part of the realty, are not the subject of larceny?

Was there in this case sufficient evidence upon which to sustain a conviction of grand larceny?

Was there error in the charge?

The defendant went to trial without counsel, hence, the record is far from satisfactory, and things occurred in the trial which should have been made the subject of objection and appeal, but which, owing to the fact that the defendant, who is a layman, was without the aid of legal counsel at the trial, were not objected to.

■ Time and again purely hearsay testimony was given without correction or proper instruction to the jury.

For instance, folio 200, Alex Gavins, witness for the State: "Do you know anything about the cutting of this timber? A. Mr. Fowler came down there and told me about it."

R. E. Fowler, State's witness, folio 220:

"Q. On whose side of the line. A. Why they told me it was Mrs. Evans' line.

"Q. You went down there and did not know the land lines? A. I went on what they told me.

"Q. You don't know whose timber was cut? A. They said it was Mrs. Evans'."

The question of the location of the lines was an important fact in the case.

Again. The defendant was asked this by the solicitor, folios 270-280:

"Q. Did you tell Mrs. Mattie O'Cain that you were going to cut this timber whether or not Mrs. Evans sold it to you? A. No, sir.

"Q. Didn't you tell her this: That Mrs. Evans said that she did not know you, but that you were going to cut that timber whether or not she sold it to you? A. No, sir."

Mrs. O'Cain was not brought to the stand to testify that the defendant had told her the things of which he was asked, hence he had no opportunity to cross examine her thereabout; but the sinister import of the questions had gone to the jury.

The Court does not look with approval upon this method of examination.

The defendant does not deny that he cut five pine trees on the land of Mrs. Evans. He says that he was employed by Mr. Sifly to cut some timber—poplar—on his land which adjoins the land of Mrs. Evans, in which statement he is borne out by Mr. Sifly. The defendant further swears that if he cut these trees on the land of Mrs. Evans, it was done inadvertently and because he did not know where the line was; that he sold this timber to Mr. Council and told Mrs. Evans to go there and get the money, and she did so.

The trial Judge charged the jury in this language: "There are two counts in this indictment, one charging the defendant with the larceny of certain timber, the property of Mrs. Evans and her son; the second charges malicious injury to the property belonging to her and her son.

"If the State has proven to your satisfaction beyond a reasonable doubt, that the defendant Collins went upon the property or land of Mrs. Evans and her boy, without their consent, without their knowledge, and stole and took and carried away the said timber, intending to deprive them of it, and converting it to his own use, then he is guilty of larceny.

"If the value of the property, so taken, was over twenty dollars then he is guilty as charged.

"The next count is for malicious mischief. That charges injury to the real estate, and it is charged that that was damaged in excess of twenty dollars. There are two different counts. They are different under the law.

\* \* \*

"You may find him guilty on one count or the other, as you see fit, or not guilty, or you may find him guilty on both counts, or guilty on one and not guilty on the other. *If you find him guilty, just say 'Guilty' and the Court will know what you mean, that you mean guilty of grand larceny.* If you find him guilty of malicious mischief the Court will take it for granted that you mean guilty of malicious mischief as charged." (Italics added.)

The charge is somewhat involved, but we think the logical construction of it is, as understood by the jury, that if they intended to convict the defendant of malicious mischief, they must do so in express language; if they intended to convict him only of grand larceny, they would say simply "Guilty" and the Court would understand that they meant guilty of grand larceny. As no express finding was made on the second charge, it follows that the defendant was acquitted of the charge of malicious mischief, and was convicted of grand larceny.

We will discuss the appeal from that point of view. It will be observed that while the defendant was charged with the offense of stealing timber, the jury was never informed that timber is defined as the body or

stem of a tree, and that a tree attached to the land cannot be the subject of larceny. It is true there was no request that the jury be so instructed, but the defendant is a layman and does not know the rule of practice in regard of such matters. But it was essential that before they could convict the defendant on the charge of stealing timber, they must know that the trees must have been severed from the land under such circumstances as transmuted them into personal property, and thus became the subject of larceny.

Under the common law real estate and things attached to it or growing out of the soil, were not the subject of larceny.

"* * * If there was a severance, and the severing and carrying away was by one continuous act, it amounted merely to a trespass. But where the severing and carrying away constituted two transactions, the object severed might become a subject of larceny. * * * Thus if the property, after being detached, is left on the freehold for a moment, it is personalty and may be stolen; but if it is kept in the hands of the thief until he leaves the premises, it is still a part of the realty, and only a trespass has been committed. * * * Larceny cannot be committed of trees when growing, or when severed and instantly carried off * * *." 17 R. C. L., pp. 33-34, Sec. 36.

"Things which the law regards as constituting a part of the land * * * are not, at common law, the subjects of larceny, until they have become severed from the realty of which they are constructively a part * * *. For the same reason, standing trees * * * are not at common law the subject of larceny so long as they remain attached to the soil. * * * When the severance is made by the thief himself, the question whether the subsequent asportation of the severed article is larceny at common law or only a continuation of the trespass depends in most jurisdictions upon the continuity of

the felonious act. If severance and asportation are separate and independent acts, the asportation is larceny, because by the severance and before the asportation the article became personalty; but if the severance and asportation were but different parts of a continuous act, the article retains its character as realty and hence is not the subject of larceny. This distinction has been criticized as subtle and illogical by Courts which have, nevertheless, felt compelled to apply it; but others have boldly declared that it is no longer the law within their respective jurisdictions, and now hold that a severance and asportation is larceny, even though effected instantaneously or by one continuous act." 36 C. J., pp. 741-742, Secs. 21-24.

In a note to the case of *State of Washington v. Klinkenberg,* 76 Wash., 466, 136 P., 692, Ann. Cas., 1915-D, 468, 49 L. R. A. (N. S.), 965, the annotator gives the following statement: "Realty or anything adhering to or savoring thereof was not a subject of larceny at common law. If there was a severance, and the severing and carrying away was by one continuous act, it amounted merely to a trespass. But where the severing and carrying away constituted two transactions, the object severed might become a subject of larceny."

The same annotator cites the following from the case of *Bradford v. State,* 6 Lea, Tenn., 634: "In sustaining a conviction of larceny of corn which was pulled, thrown in a pile, taken to a ditch in another man's field, and then removed, the Court * * * held correct a charge that, 'in regard to things once a part of the realty, it must be proven that they were severed from the realty before the act of larceny was committed upon them. If the severance and asportation were one continued act of the prisoner, it is only a trespass; but if the severance were the act of another person, or if, after severance by the prisoner, any interval of time elapsed, after which he returned and took the articles

away, the severance and asportation being two distinct acts, it is larceny.' "

Further, from 49 L. R. A. (N. S.), page 966, this is taken:

"Larceny could not be committed of trees when growing, or when severed and instantly carried off. *Lee v. Risdon,* 7 Taunt., 188; *Udal v. Udal,* Aleyn, 81; *Smith v. Ward,* Cro. Jac., 674; *Baker v. Pierce,* 6 Mod., 23.

"But it is held of trees in *State v. Prince,* 42 La. Ann., 817, 8 So., 591, that property cut down and detached, if removed either by the accused or by another, and left in this detached condition, no matter for how short a time, may become the subject of larceny."

It appears that in some few jurisdictions, the Courts hold that trees severed from the soil immediately become personalty and are the subject of larceny. In most of the jurisdictions, the rule is that if the severance and asportation are one continuous act, the severed articles (trees) retain the character of realty and are not the subject of larceny. If the severance and asportation be separate and distinct acts, the severed article may be the subject of larceny.

In some jurisdictions the whole matter is regulated by statutes. In this State, Section 1184, Criminal Code, 1932, provides for the punishment of one who willfully, unlawfully and maliciously cuts, mutilates, defaces or otherwise injures any tree, etc.

Section 1160, Criminal Code, provides that "such fixtures and parts of the soil as were severed from the soil by an unlawful act, below the value of twenty dollars, shall be a misdemeanor." Section 1169, Criminal Code, provides that whoever shall steal from the premises of another, any melons or fruits, whether severed from the freehold or not, shall be guilty of a misdemeanor. And Section 1172 provides that whoever shall steal from the field any grain, cotton, or vegetables, whether severed from the freehold or not, shall be deemed guilty of a misdemeanor.

But the State has not enacted any statute regulating the larceny of trees, therefore, the rule of the common law thereabout prevails in this State, except as interpreted or declared by the Court of other jurisdictions and textbook writers.

We prefer and adopt that rule which holds that trees growing out of the soil are realty, and continue to be realty until severed from the soil. It may then become the subject of larceny, according to the circumstances under which the severance and asportation are made. If the severance and asportation are one continuous act, there is no larceny. If they are separate and distinct acts, the articles severed may be the subject of larceny.

In the light of this holding, let us scan the facts of this case and apply the rule to them.

We may remark that in this case, where the defendant was a layman and was without counsel to represent him, the jury was given no instruction on this important matter which was the very crux of the case. True, there was no request for such instruction to be given, but in the peculiar circumstances surrounding this trial, this Court deems it to be its duty to consider and decide this issue.

It was a question for the jury to determine, under proper instructions, whether the severance and asportation were one continuous act, or two separate and distinct acts.

We have carefully examined the evidence and can find none upon which to hold that there is proof beyond a reasonable doubt that the acts of severance and asportation were separate and distinct acts. On the contrary, there is the testimony of a State's witness that he heard the cutting, went down there and saw Collins cutting the trees into logs which he put on a truck and hauled away. If, as is charged in the indictment, the defendant was surreptitiously and feloniously cutting these trees, it stands to reason that after cutting them he removed them im-

mediately. The reasonable inference is that the severance and asportation was one continuous transaction, hence there was no larceny. The action was one of trespass, and of that the defendant was acquitted.

We are of the opinion that there was no sufficient evidence to warrant a verdict of guilty of grand larceny. When the Court instructed the jury, "if you find him guilty just say 'Guilty' and the Court will know what you mean, that you mean guilty of grand larceny," there was eliminated from the consideration of the jury the question of petit larceny. If the jury had found, or if it had been proved, that the severance and asportation constituted two separate and distinct transactions, and therefore the timber was a subject of larceny, nevertheless, the evidence to show that the timber alleged to have been taken from Mrs. Evans was of the value of more than twenty dollars was wholly insufficient. The value of the timber must have been proved to be above twenty dollars in order to sustain the verdict of grand larceny. It is in evidence that only pine trees were cut from the land of Mrs. Evans and that only five of these were sold to Council, and brought either $9.22 or $11.52. When defendant was arrested, he asked the deputy sheriff to tell Mrs. Evans that this money from the pine trees was at Council's and to go and get it. Evidently, she got the message and went and got the money. She made no claim to the money which Council had, arising apparently from the sale of the poplar trees which it appears from some of the evidence was cut from the land of Mr. Sifly under contract with him.

If Mrs. Evans had thought that that money from the poplar trees was hers, she doubtless would have claimed it when she got that for the pine trees.

We do not think that the proof of the value of the alleged stolen timber was of that degree and character which shows beyond a reasonable doubt that the defendant was guilty of grand larceny.

The judgment is reversed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.