[No. 29727-9-I. Division One. July 5, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. LAWRENCE
E. JACOBSON, *Appellant*.

*Lorraine Lee* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Ivan L. Orton, Deputy,* for respondent.

WEBSTER, C.J. — Lawrence E. Jacobson appeals his conviction of theft in the first degree, criminal conspiracy, and perjury. He claims: the theft in count 4 (sale of the condominium) and perjury convictions were not supported by the evidence; his statement fell outside the perjury statute; the court erred in not dismissing counts 4 and 5 for lack of jurisdiction; the court improperly submitted a question of law to the jury and improperly imposed an exceptional sentence. We affirm.

## FACTS

After Jeanette Moser (Jacobson's 88-year-old aunt) moved to Seattle in 1984, Jacobson became involved in controlling her financial affairs. In 1984 Moser's net worth approximated $750,000 (not counting a Palm Springs, California, condominium) and by mid-1988 her net worth had fallen to approximately $311,000. Jacobson obtained a general power of attorney for Moser in July 1984, and a durable power of attorney in August 1984. On December 22, 1984, Moser amended the "Moser Trust", in which all of her assets had been placed, substituting Peoples National Bank of Washington for the Bank of America in Palm Springs, California, as

the trustee. At the same time Moser transferred the condominium from the "Moser Trust" to a newly created trust, the "Jeanette Moser Condominium Trust" (Condo Trust).

The condominium was the only asset of the Condo Trust, which was to be held for the use, enjoyment and benefit of the beneficiaries. Moser named six beneficiaries, in equal shares: Jacobson, Pat Jacobson (Jacobson's wife), Bruce Jacobson and Lynne Grams (Jacobson's children), and Dustin and Ryan Grams (Jacobson's grandchildren). As trustee, Jacobson held title to the condominium and under its terms was obligated to sell the condominium upon the request of any beneficiary. In March 1987, Bruce assigned his interest in the Condo Trust to Jacobson.

Moser also opened a checking account with Peoples Bank. Each month, $5,000 was automatically transferred from the "Moser Trust" to the account. Additional transfers had to be authorized by Moser or Jacobson. Either Moser or Jacobson could write checks on the account, and the statements were sent to Jacobson.

On March 1, 1985, Moser signed a limited partnership agreement investing $100,000 in Jacobson's restaurant. Jacobson testified that because there were insufficient funds in the checking account to cover the investment, he wrote checks in smaller amounts from Moser's account to cover the investment. In 1986, Moser signed two checks payable to Jacobson in the amounts of $50,000 and $40,000. He testified that they were gifts. These checks were never cashed; the funds were again withdrawn in smaller amounts from Moser's checking account. Jacobson claimed that if the total amount of all the checks he wrote exceeded $190,000 (the amount of the gifts and investment), then that was due to his lack of bookkeeping rather than an intent to deprive Moser of her money.

In July 1987, Moser was diagnosed with Alzheimer's disease and incompetent to handle her financial affairs. In November 1987, following a stipulated finding that Moser was incompetent, attorney James Treadwell was appointed guardian of her estate. In March 1988, Treadwell learned Jacobson was in the process of selling the condominium. He

filed an ex parte petition for a temporary restraining order (TRO) which the court issued on March 18, 1988, barring Jacobson from exercising authority as trustee of the Condo Trust. Notwithstanding the TRO, Jacobson, acting in his trustee capacity, sold the condominium to his inlaws, Paul and Ruth Mangini, on May 18, 1988.

Jacobson was charged with four counts of first degree theft (counts 1, 2, 4 and 6), two counts of criminal conspiracy (counts 3 and 5), and one count of first degree perjury (count 7). Counts 2 and 3 were dismissed for the State's failure to establish a prima facie case. On September 27, 1991, the jury found Jacobson guilty as charged on the remaining counts. The court imposed an exceptional sentence of 5 years on the theft counts (counts 1, 4 and 6) and conspiracy count (count 5), and the maximum standard range sentence for perjury (count 7).[1] The sentences were to run concurrently and Jacobson was ordered to pay $400,000 in restitution.

# I

 Jacobson claims that the State failed to prove a theft by the taking of the condominium (count 4). He argues that since the TRO did not change his status as legal title holder he could not be found guilty of taking the property of another. Theft means "[t]o wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him of such property or services". RCW 9A.56.020(1)(a). To constitute the property of another person, the item must be one in which another person has an interest, and the defendant may not lawfully exert control over the item absent permission of that other person. *State v. Joy*, 121 Wn.2d 333, 340-41, 851 P.2d 654 (1993).

 The validity of a trust interest in land and questions of title are determined by the law of the state where the land is situated. *Laughlin v. March*, 19 Wn.2d 874, 877, 145 P.2d 549 (1944); *Werner v. Werner*, 84 Wn.2d 360, 366, 526 P.2d 370 (1974). Under California law the owners of the condominium

---

[1]Standard ranges were: 4 to 12 months for theft (counts 1, 4 and 6); 3 to 9 months for conspiracy (count 5); 15 to 20 months for perjury (count 7).

were the beneficiaries of the trust.[2] By retaining the right to modify the Condo Trust Jeanette Moser also retained an ownership interest in that trust. Under the terms of the Condo Trust the trustee had no power to sell the condo unless requested to do so by a beneficiary. California Civil Code § 2230 forbids a trustee to act whenever he or she has an interest adverse to other beneficiaries unless all other beneficiaries, with full knowledge of the trustee's motives and all facts concerning the transaction, permit the trustee to do so. *Jorgensen v. Beach 'N' Bay Realty, Inc.*, 125 Cal. App. 3d 155, 161, 177 Cal. Rptr. 882 (1981). As an interested party Jacobson had no authority to sell the condominium without a request from a beneficiary and agreement of all other beneficiaries, which he did not have, legal title not withstanding. Further, since Jacobson did not have the authority to exercise his trustee power, his transfer of title to the Manginis in contravention of the court's order constituted an unauthorized act. Thus, the sale of the condominium constituted theft.[3]

Jacobson claims that real property cannot be the subject of a theft by taking under common law and *State v. Klinkenberg*, 76 Wash. 466, 136 P. 692 (1913), since land cannot be

---

[2]Jacobson claims that under California law, the trustee holds title to trust property and the beneficiaries have only an equitable interest in the trust property. Citing George T. Bogert, *Trusts* § 37, at 133, 135 & n.19 (6th ed. 1987). However, under California law "the *cestui que* [the beneficiary of a] *trust* is regarded as the real owner of the property, the trustee being merely the depositary of the legal title. His is not a property right, but a legal duty founded upon a personal confidence; his estate is not that which can be enjoyed, but a power that can be exercised." *Title Ins. & Trust Co. v. Duffill*, 191 Cal. 629, 647-48, 218 P. 14 (1923), *cited in* Bogert § 37, at 136 n.21; *see also Pearce v. Superior Court*, 149 Cal. App. 3d 1058, 1063, 197 Cal. Rptr. 238 (1983).

[3]It is the conflict between Jacobson's status as a title holder under California law and the TRO's restrictions on the exercise of any authority as trustee that makes this a theft by taking. Under California law, a grant deed issued by the title holder is presumed valid and vests title in the recipient of that deed. Cal. Evid. Code § 662; *Protestant Episcopal Church in Diocese of Los Angeles v. Barker*, 115 Cal. App. 3d 599, 171 Cal. Rptr. 541, *cert. denied*, 454 U.S. 864 (1981). Thus, the transfer of title to the Manginis, even though voidable because of the TRO, was an effective transfer; the theft was complete at the time of transfer. Since the TRO effectively removed all authority from Jacobson as trustee, the sale was not accomplished by exertion of unauthorized control of the property of another under RCW 9A.56.020.

carried away like chattels. He argues the Legislature, by failing to explicitly make theft of real property a crime, incorporated the *Klinkenberg* construction.

■ Changes have been made to the applicable statutes since the *Klinkenberg* decision. In 1913, property included "both real and personal property." *Rem. & Ball. Code* § 2303 (Pierce's Code tit. 135, § 101). The Legislature qualified when the definition would not apply, stating: "In construing the provisions of this act, save when otherwise plainly declared or clearly apparent from the context, the following rules shall be observed". Rem. & Ball. Code § 2303 (Pierce's Code tit. 135, § 101). In not applying the definition, the *Klinkenberg* court relied solely on the "clearly apparent from the context" part of that qualifier. *Klinkenberg*, at 471. Under the current statute " '[p]roperty' means anything of value, whether tangible or intangible, real or personal". RCW 9A.04.110(21). The current relevant qualifier is that the rules apply: "In this title unless a different meaning plainly is required". RCW 9A.04.110. Thus, contrary to Jacobson's assertion, the Legislature has both expanded the definition of property to include real property and narrowed the circumstances under which the definition need not be followed to circumstances where a different meaning is plainly required.

Jacobson does not cite a valid reason why the Legislature's intent to include real property in the definition of property should be ignored. To "take" means, *inter alia*, to assume ownership. *State v. Britten*, 46 Wn. App. 571, 574, 731 P.2d 508 (1986). Thus, by transferring title of the condominium to the Manginis Jacobson assumed ownership of the property, and thus, "took" the condominium or the value thereof.

Jacobson also claims the King County Superior Court did not have subject matter jurisdiction because the property was located in California and his act of selling the condominium in California did not affect persons or property within this state. He characterizes the conduct at issue as a breach of fiduciary duty and argues that the only effect in Washington was to create a cause of action in equity against him.

■ "Under the Washington long-arm criminal jurisdiction statute, Washington has jurisdiction over any 'person who commits an act without the state which affects persons or property within the state, which, if committed within the state, would be a crime.' " *State v. Brown*, 29 Wn. App. 11, 13, 627 P.2d 132 (1981); RCW 9A.04.030(5). Here, Washington has jurisdiction because all of the beneficiaries of the trust live in Washington, as well as the trustor, Mrs. Moser. Those beneficiaries have property interests relating to the trust which were affected by Jacobson's conduct in selling the condominium. Thus, sale of the condominium affected persons in Washington.

■ "The trust may be enforced and a conveyance ordered wherever the trustee may be found, regardless of the situs of the property." *Donaldson v. Greenwood*, 40 Wn.2d 238, 250, 242 P.2d 1038 (1952). " 'A state can exercise through its courts jurisdiction to order or to forbid the doing of an act within the state, although to carry out the decree may involve doing an act or affecting a thing in another state.' " *Donaldson*, at 250-51 (quoting Restatement of Conflict of Laws § 97, at 147 (1934)). Jacobson confuses Washington control over the sale of property located in California with Washington control over the power to sell the property. If, as in *Donaldson*, a Washington court can order a trustee to convey property outside the state, it can equally prohibit a trustee from conveying property, or prohibit a trustee from exercising his trustee powers, the precise action taken by the court here. Jacobson's sale of the condominium was in direct violation of the Washington TRO suspending his authority as trustee of the condominium trust. Jacobson's act outside the state had the effect of frustrating the power of the Washington judiciary. Washington's interest in protecting the validity of its judgments and the rights of its citizens gives it jurisdiction to punish the acts of a person committed outside the state when those acts thwart those valid interests. *Roberts v. State*, 619 S.W.2d 161, 164 (Tex. Crim. App. 1981).

## II

■ Jacobson also claims that as holder of the legal title, the agreement to sell the condominium was not an agreement to engage in conduct constituting a crime. He argues that the act was not criminal, and therefore there was no criminal conspiracy. A criminal conspiracy requires a person, "with intent that conduct constituting a crime be performed, [agree] with one or more persons to engage in or cause the performance of such conduct, and any one of them takes a substantial step in pursuance of such agreement." RCW 9A.28.040(1); *State v. Walker*, 24 Wn. App. 78, 80, 599 P.2d 533 (1979). Here, there is no dispute that Jacobson and the Manginis agreed to the sale of the condominium, and the sale was completed. Jacobson and the Manginis knew the TRO restricted Jacobson's power to sell the condominium.[4] The sale of the condominium to the Manginis was illegal. Thus, the jury could find the agreement to that sale was a criminal conspiracy.

■ Jacobson next claims that the application of *Wharton's* rule precludes the charge of criminal conspiracy because he as the seller and the Manginis as the buyers were necessary to the sale of the condominium. *Wharton's* rule states that when a substantive offense requires the participation of two persons and no more than two persons are involved in the agreement to commit the offense, the charge of conspiracy will not lie. 1 Ronald A. Anderson, *Wharton's Criminal Law* § 89, at 191 (1957). It is the offense in general, not the form of it committed by the defendant, which must require cooperative action before *Wharton's* rule applies. *See Gebardi v. United States*, 287 U.S. 112, 122-23, 77 L. Ed. 206, 53 S. Ct. 35, 84 A.L.R. 370 (1932). A theft does not necessarily require the participation of two persons. A theft can be committed by one person: a person shoplifting goods, an embezzler stealing money, a con artist in obtaining money by deception. Moreover, here there were three people involved in this conspiracy: Jacobson, Ruth Mangini, and Paul Mangini. Jacobson cites no

---

[4]David Mark testified that Jacobson told him that the Manginis knew of the TRO and suggested that the sales agreement be backdated so that they could argue that the order did not restrict Jacobson's ability to sell the condominium.

authority for his assertion that Ruth and Paul should count as only one person. RAP 10.3(a)(5); *State v. Fortun*, 94 Wn.2d 754, 756, 626 P.2d 504 (1980). *Wharton's* rule does not apply.

## III

Jacobson also claims that in instructing the jury on count 6, the court improperly instructed that to find Jacobson guilty it had to find that he "exerted unauthorized control" over the property of another. Instruction 15(1). He contends that the court improperly allowed the jury to decide questions of law relating to interests of the beneficiaries, assignment of those interests, the competency of the trustor and its impact on the validity of the trust.

"[A] party is generally required to take exception to a jury instruction at trial in order to preserve the issue for appellate review." *State v. Noel*, 51 Wn. App. 436, 438, 753 P.2d 1017, *review denied*, 111 Wn.2d 1003 (1988). "If a party is dissatisfied with an instruction, it is that party's duty to propose an appropriate instruction and, if the court fails to give the instruction, take exception to that failure. If a party does not propose an appropriate instruction, it cannot complain about the court's failure to give it." *Hoglund v. Raymark Indus., Inc.*, 50 Wn. App. 360, 368, 749 P.2d 164 (1987), *review denied*, 110 Wn.2d 1008 (1988).

Here, Jacobson did not ask the court to rule on the questions of law or otherwise instruct the jury on the question he now complains should not have been presented to the jury. In fact, he proposed instructions D-12, 14, 15, 17, 18 and 19 using the "exerted unauthorized control" phrase. He did not propose any instruction that would have further defined the phrase he proposed, nor did he take exception to the instruction given. In addition, his proposal of an instruction containing the very same alleged error constitutes a waiver of the alleged error. *State v. Neher*, 112 Wn.2d 347, 352-53, 771 P.2d 330 (1989). The issue was not preserved.

## IV

Jacobson also claims the first degree perjury conviction was not supported by the evidence. He argues that the first

degree perjury requirement of "any official proceeding" requires live testimony in open court. "A person is guilty of perjury in the first degree if in any official proceeding he makes a materially false statement which he knows to be false under an oath required or authorized by law." RCW 9A.72.020(1). An official proceeding includes a proceeding heard before any judicial official authorized to hear evidence under oath. RCW 9A.72.010(4).

■■■ Jacobson admits that the affidavit he submitted to the King County Superior Court contained a false statement and that he knew it was going to be used in litigation.[5] He alleged having provided the information relating to the sale of the condominium to his attorney who then prepared the affidavit which he signed without thoroughly reading it and did not know it contained the false statement. He does not argue that the hearing for which he submitted the affidavit was not an official proceeding, or that the statement was not made under oath. Nor does he argue that his statement was not prepared for, submitted to and used in that hearing. Rather, he argues that by submitting a written statement, not live testimony, under oath to a judge, the statement was not made at the hearing.

RCW 9A.72.085 provides evidence that the Legislature did not intend that the statement had to be live testimony during the official proceeding.

> Whenever, under any law of this state . . . any matter in an official proceeding is required or permitted to be . . . proved by a person's sworn written statement . . . the matter may with like force and effect be . . . proved in the official proceeding by an unsworn written statement, declaration, verification, or certificate . . .[.]

RCW 9A.72.085. The statute uses the phrase "in an official proceeding" and makes reference to the form of certification executed and submitted by Jacobson here. This statute indicates that the Legislature did not view "in an official pro-

---

[5]In the affidavit, Jacobson stated that in February 1985 he entered into a sale option to purchase agreement with Paul E. Mangini and Ruth E. Mangini, received $50,000 from the Manginis, and gave them a quitclaim deed. He testified at trial that the sale occurred May 18, 1988.

ceeding" as requiring the statement be made at the proceeding in the presence of the official. Thus, a first degree perjury conviction may be based on a written statement as well as live testimony. We agree with the court below that "[a] statement is made in an official proceeding if it was given in or *in aid of an official proceeding.*" (Italics ours.)

Jacobson also claims the court erred in refusing to give the lesser instruction on false swearing. "A person is guilty of false swearing if he makes a false statement, which he knows to be false, under an oath required or authorized by law." RCW 9A.72.040(1). False swearing does not require the statement to have been made in an official proceeding. To give a lesser included instruction: (1) each element of the lesser offense must be a necessary element of the offense charged, and (2) the evidence in the case must support an inference that the lesser crime was committed. *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). The second prong has been interpreted as requiring that the evidence in the case must support an inference that only the lesser crime was committed. *State v. Rodriguez*, 48 Wn. App. 815, 818-19, 740 P.2d 904, *review denied*, 109 Wn.2d 1016 (1987).

Jacobson admits the evidence supports an inference that all of the elements of first degree perjury are met except the official proceeding element. Since the statement was made in an official proceeding, no rational trier of fact could conclude the evidence supported an inference that the lesser but not the greater offense was committed.

We affirm the judgment and sentence.

The remainder of this opinion has no precedential value. Therefore, it will not be published but has been filed for public record. *See* RCW 2.06.040; CAR 14.

COLEMAN and KENNEDY, JJ., concur.

After modification, further reconsideration denied July 27, and August 4, 1994.

Review denied at 125 Wn. 2d 1016 (1994).