[No. 9700–8–I.   Division One.   March 29, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. D. H., *Appellant.*

G. William Shaw, for appellant.

Norm Maleng, Prosecuting Attorney, and Robert S. Lasnik, Deputy, for respondent.

RINGOLD, J.—D. H. was charged in the juvenile department of King County Superior Court with the crime of theft in the second degree. Following a fact–finding hearing on November 18, 1980, the court entered a finding of guilty. An order of disposition was entered on December 16, 1980, from which D. H. appeals. We conclude the evidence supports the trial court's finding, in accord with the standard of proof beyond a reasonable doubt, that a theft occurred and that D. H. was an accomplice to that theft.

On August 30, 1980, a University of Washington police officer observed two young women removing clothing from hangers and throwing the hangers down the window well in a University building. The officer noticed that theft prevention tags were still attached to the clothing, and placed the women under arrest. Later that afternoon, Dong Soo Kim, the owner of The Fashion Express, a retail clothing

store in the University District, identified the clothing as coming from his store. He later testified that the clothing had an aggregate retail value of $300. The two women had been in his store earlier that day for about an hour but had made no purchases.

D. H., the sales clerk who had attended the two women at The Fashion Express, was placed under arrest later that day. In a statement given to police after she was informed of and waived her *Miranda*[1] rights, D. H. stated that one of the customers, Pebbles, had asked her upon entering the store if she was "cool" and if Pebbles and her friend could "get over." D. H. understood this to mean that Pebbles was asking her if it was safe to shoplift.

At the fact–finding hearing Kim testified that he and D. H. were the only employees in the store that morning. He had been suspicious of Pebbles and her friend when they entered the store because they were carrying big bags and did not look like they would buy anything. Kim asked D. H. to wait on the customers and watch them carefully. She remained with them throughout the hour they were in the store, while they tried on many items of clothing. About 10 minutes before they left, Pebbles asked Kim if she could use the restroom. He testified that he told her "No," at first, but that after D. H. said she would accompany her to the back hallway, where the restroom was, he acquiesced. A door in the back hallway opens on an alley and parking area to the rear of the store. After Pebbles returned from the restroom, she and her friend left the store without buying anything. Both Kim and D. H. examined their bags before they left, and did not see any clothing. At the close of the State's case, the defense challenged the sufficiency of the evidence to make out a prima facie case of theft. The court denied the motion.

D. H. testified in her own defense and stated she had been acquainted with Pebbles 2 years. earlier in junior high

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

school. She was surprised to see Pebbles that day, and they talked about an upcoming concert for which Pebbles wanted new clothes. When Pebbles asked her if it was all right to "get over," she told her "to have a little more respect for me, and where I worked and everything." D. H. testified that when Pebbles had asked her if she could use the restroom, she had said "No," but that Kim told her to accompany Pebbles to the back hallway and let her use the restroom. She stated that Pebbles did not take her bag with her when she went into the restroom. On cross-examination, D. H. testified that she was with the two customers the entire time they were in the store, and neither saw nor helped them take anything.

Based on this testimony, the court made its finding of guilt. The court found that the clothing in the possession of the two young women when they were arrested was taken by them without the owner's permission from The Fashion Express when they were there earlier that day. From D. H.'s testimony that she stayed with the customers the entire time they were in the store and that they had told her they intended to shoplift, the court found that D. H. knew of the theft as it was happening and intentionally looked the other way, allowing the theft to be completed and encouraging them in its commission. The court found D. H. legally accountable for their conduct and guilty of theft in the second degree.

D. H. assigns error to the court's finding of guilt[2] for three reasons. First, she claims that the evidence was insufficient to sustain the court's finding that a theft occurred because there was no evidence which would permit a

---

[2]Although D. H. fails to assign error to the court's findings of fact, which were entered on September 29, 1981, we will not treat those findings as verities on appeal. We note that the appellant's brief was filed on May 22, 1981, 4 months before the findings were presented to the trial court by agreement of the parties. The findings of fact and conclusions of law are set out in an appendix to the State's brief and the nature of D. H.'s challenge to the sufficiency of the evidence is clear. We will therefore not require strict compliance with RAP 10.3(g). *See State v. Williams*, 96 Wn.2d 215, 634 P.2d 868 (1981).

rational trier of fact to find beyond a reasonable doubt that clothing was taken from The Fashion Express without permission. *State v. Green*, 94 Wn.2d 216, 616 P.2d 628 (1980).

Nonconsent of the owner is an element of the crime of theft and need not be proved by direct evidence. *State v. Gosby*, 85 Wn.2d 758, 539 P.2d 680 (1975); *State v. Wong Quong*, 27 Wash. 93, 67 P. 355 (1901). The circumstances of this case when viewed in the light most favorable to the State permit an inference beyond a reasonable doubt, *State v. Green, supra*, that the clothing was taken from The Fashion Express without the permission of the owner.

D. H. next contends that there was insufficient evidence to sustain the trial court's finding of accomplice liability. She argues that "something more than presence alone plus knowledge of ongoing activity must be shown to establish the intent requisite to finding" accomplice liability. *In re Wilson*, 91 Wn.2d 487, 492, 588 P.2d 1161 (1979).

While we agree with the statement of the rule, we note significant differences between these facts and those in *Wilson*, where a group of youths tied a rope to a tree and pulled it tight across a road when vehicles approached. The only evidence that Wilson encouraged the crime was his presence and his knowledge of the illegal activity. He was found guilty of reckless endangerment. This court affirmed, finding that Wilson's knowing and continued presence at the scene was sufficient to support a finding that he encouraged the ongoing crime by giving courage to the actors. *In re Wilson*, 19 Wn. App. 104, 573 P.2d 1363 (1978). The Supreme Court reversed, finding that presence and knowledge alone were insufficient, absent evidence from which a readiness to assist or an intent to encourage could be inferred, to support a finding of accomplice liability. *Wilson*, 91 Wn.2d at 491–92.

Here, the trial court specifically found that D. H. acquiesced in the intent of the customers to deprive Kim of his property after being advised by Pebbles that a theft was about to occur. The court further found that D. H. knew that clothing was removed from the store to the back alley

and did nothing to prevent the theft, after having first agreed to watch the suspicious customers closely. These findings were supported by substantial evidence and permit the inference beyond a reasonable doubt that D. H. intended to encourage the theft, and not only was ready to assist but actually did assist in its commission, thus fulfilling the criteria set out by the Supreme Court in *In re Wilson, supra.* Knowing assistance of another in the commission of a crime is a predicate for accomplice liability. RCW 9A.08.020. The trial court did not err in finding D. H. guilty as an accomplice.

Finally, D. H. claims that the court based its decision on inadmissible hearsay testimony. We note that the police officer testified that Pebbles and her friend told him about D. H.'s complicity in the theft. While the court did refer to "the statements of the girls" in giving its oral decision, both the decision and the findings of fact entered later make clear that the court was referring to D. H.'s testimony that Pebbles had asked her if she was "cool" and if they could "get over." This testimony was properly before the court and relevant to a determination of D. H.'s knowledge and intent.

We affirm the trial court's finding of guilt and order of disposition.

WILLIAMS and CORBETT, JJ., concur.

Reconsideration denied May 12, 1982.

Review by Supreme Court pending December 15, 1982.