IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39216-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| LAUREL LYNNE HANLEY, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — In 1975, the Washington State Legislature separated the legal

constructs of accessory before the fact from accessory after the fact. The legislature

placed the concept of accessory before the fact in RCW 9A.08.020 and labeled one's

assistance to the principal before the crime's completion as accomplice liability. The

legislature inserted the notion of accessory after the fact in RCW 9A.76.050 and branded

one's aid to the principal after the crime as rendering criminal assistance. *State v. Budik*,

173 Wn.2d 727, 272 P.3d 816 (2012); *State v. Anderson*, 63 Wn. App. 257, 261, 818 P.2d

40 (1991).

This severance of legal theories controls the outcome of this appeal. A jury

convicted appellant Laurel Hanley of being an accomplice to Kimberly Parsley's crimes

of second degree burglary and third degree theft. Assuming the State presented evidence sufficient to convict Hanley of knowingly aiding Parsley with her criminal episode, the evidence avails only as to assistance after completion of the crimes. The State did not charge Hanley with rendering criminal assistance. We reverse her two convictions based on accomplice liability.

FACTS

The prosecution of Laurel Hanley arises from Kimberly Parsley's June 19, 2020 burglary of a remote Stevens County property and the purloining of a family heirloom from the property's barn. The State claims Hanley acted as an accomplice to Parsley. A security camera video, shown to the jury, captured extracts of actions taken by Parsley at the rural, rustic property. The video, divided into six short segments, contains gaps in Parsley's conduct from one slice to another slice. Each video lasts between five to twenty-three seconds.

Laurel Hanley and Kimberly Parsley are acquaintances. The State presented no evidence as to the closeness of the two women's relationship. The record does not show that Hanley knew of any propensities of Parsley to steal or knew of any criminal history of Parsley.

The burgled property, owned by the Britschgi family, lies off Burnt Valley Road outside of charming Chewelah. The Britschgi family moved into the property's residence in 1969. The residence sits at the end of a long driveway, one hundred yards from the

2

main road.  The Britschgi mother and father raised two daughters and one son at the residence.  The father had served as a military airplane mechanic during World War II.  The mother lived in the home until 2019, when she died.  The father predeceased the mother.  No one has resided in the home since the death of the mother.

After the death of the mother, the son, Richard Britschgi, installed a security system around the house.  Richard resides in San Juan Capistrano, California.  The security system included motion sensitive cameras interspersed throughout the property.  The system sent a notification to Richard's phone when it sensed a motion.  Richard could then view what the cameras recorded and hear audio from the recording.

Near 7:30 p.m., on June 19, 2020, Kimberly Parsley and Laurel Hanley traveled to the Britschgi family property on Burnt Valley Road.  The pair traveled in Hanley's Ford Focus, with Hanley in the passenger seat and Parsley driving.  Parsley parked the vehicle behind the house.  The first segment of the security camera video begins with the last yards of travel by the Focus and the parking of the car by Parsley.

The second fragment of video shows Kimberly Parsley, adorning blonde and pink hair, outside the Ford Focus and walking to the Britschgi residence's back door.  Laurel Hanley remained seated in the Ford Focus passenger seat.  Parsley rapped on the house's back door and peered into an adjacent window.  The third video fraction shows Parsley continuing to look intently through the back window and later walking off camera.  The fourth video section, a five-second section, pictures Hanley sitting alone in the Focus.

3

The fifth security camera video subdivision, running six seconds, depicts Kimberly Parsley walking along the driver's side of the Ford to the back of the car while carrying a green coat. Laurel Hanley still sits in the passenger seat. The front of the car blocks the spectator's view of the car's rear and trunk, but Parsley appears to attempt to open the back hatch. This fifth video sector ends with Parsley walking to the driver's side of the Ford while stating: "How the f--- do." PE-1E 00:05-00:06. We do not know the remainder of Parsley's vulgarized sentence recorded on the fifth fragment. We do not know what, if any, response Hanley gave to Parsley's remark. None of the recording sections capture Hanley talking. The sixth and final video portion shows Parsley driving the car away from the residence.

Stevens County Sheriff's Detective Michael Gilmore testified that he heard, on one of the video slices, Kimberly Parsley asking Laurel Hanley about a key or other way to access the back of the Ford Focus. The State mentions this testimony in its appellate brief. The sound on the video segments does not confirm this testimony. Detective Gilmore also averred at trial that one can hear, on the surveillance footage, Hanley warning Parsley "not to do this." Report of Proceedings (RP) at 113. The video segments do not confirm this warning being given.

While off camera and between the third and fourth video segments, Kimberly Parsley entered a barn separate from the home and took the Britschgi father's World War II uniform hanging on a hook in the barn. The green coat one sees on the fifth video slice

4

is the military uniform. The State presented no evidence that Laurel Hanley knew in advance that Parsley intended to take any object from the property, let alone the uniform.

Richard Britschgi, through information-age technology and from his location in California, saw some of the activities of Kimberly Parsley at the Burnt Valley Road residence during the evening of June 19, 2020. He called Stevens County law enforcement. Deputy Sheriff Eric Peterson traveled to the Britschgi property. He found nobody present.

Richard Britschgi called Stevens County law enforcement again late that night. Britschgi again saw, from the security cameras, movement at the Stevens County residence. At 12:30 a.m., Deputy Sheriff Eric Peterson responded again. Other law enforcement officers joined him. On arrival at the Burnt Valley Road property, the officers saw a person rushing to a truck and one person already seated in the truck. Laurel Hanley's Ford Focus was not present. Kimberly Parsley, the female with pink and blonde hair already seated in the truck, told officers of the presence of controlled substances in the truck. Officers seized the truck and obtained a search warrant to search the car. The officers found a World War II military jacket, security system cameras, and drugs in the truck. The burglars had removed security cameras. Officers arrested Parsley and her male companion. Hanley was not present at the Britschgi property that night.

Months later after looking at the video footage from 7:30 p.m. on June 19, Stevens County Sheriff Sergeant Michael Gilmore connected Laurel Hanley to the Ford Focus

through the license plate number on the car. Gilmore spoke to Hanley on November 5, 2020. Hanley insisted she never exited the Ford Focus. She asserted that she did not approve of Kimberly Parsley's conduct and that she had told Parsley that the two needed to leave the property. When Gilmore asked Hanley what Parsley removed from the property, Hanley answered: a green uniform. Hanley added that, when Parsley brought the uniform to the car, she objected to the uniform being taken.

## PROCEDURE

The State charged Laurel Hanley as an accomplice to second degree burglary and to third degree theft. The jury convicted Hanley of both crimes.

## LAW AND ANALYSIS

On appeal, Laurel Hanley challenges the sufficiency of the evidence to convict her of both second degree burglary and third degree theft as an accomplice. She also challenges the imposition of a victim penalty assessment of $500 at sentencing. Since we reverse the convictions, we do not address the latter argument.

Laurel Hanley contends that the State's evidence, confirmed by the video snippets, only established her presence in the car when Kimberly Parsley pilfered the military coat. Hanley argues that she gave no assistance to Parsley, a prerequisite to accomplice liability.

The State first responds that Laurel Hanley knew, when Kimberly Parsley drove Hanley's car to the rural Britschgi family property, that Parsley planned to burgle the

6

uniform. The State adds that, although no direct testimony established Hanley's knowledge, a reasonable jury could infer this knowledge from testimony presented and the videos viewed. According to the State, Detective Michael Gilmore's testimony confirms this knowledge, particularly Gilmore's assertion that Hanley told Parsley: "not to do this." RP at 113.

Secondarily, the State contends that, assuming Laurel Hanley did not know the intentions of Kimberly Parsley when Parsley parked the car behind the Britschgi home, Hanley knew of Parsley's objective when Parsley returned to the car with the coat, which obviously did not belong to Parsley. Then Parsley complained, as heard on the fifth video segment, of an inability to open the back hatch of the Ford Focus. Hanley took no steps to prevent Parsley from placing the uniform into the Focus. Hanley likely assisted Parsley in opening the back of the car. The jury could conclude by the video that Hanley did not instruct Parsley to return the coat to the barn. Thereafter, Hanley continued to allow Parsley use of her car to drive from the property.

In summary, the State argues that Laurel Hanley knew of Kimberly Parsley stealing the military coat before Parsley completed the crime and Hanley knew at the same time that Parsley needed her car to accomplish the crime. In so arguing, the State misperceives the nature of accomplice liability and the time at which one completes a crime.

Before addressing the sufficiency of evidence, we analyze the difference between accomplice liability and rendering criminal assistance. We then isolate the respective times of completion of the burglary and theft.

Accomplice Liability and Rendering Criminal Assistance

A person is guilty of committing a crime by another if she is an accomplice to the commission of the crime. *State v. Allen*, 178 Wn. App. 893, 903, 317 P.3d 494 (2014), *reversed on other grounds by State v. Allen*, 182 Wn.2d 364, 369, 341 P.3d 268 (2015). Under Washington statute, a person acts as an accomplice to a crime if:

> (a) With knowledge that it will promote or facilitate the commission of the crime, he or she:
> (i) Solicits, commands, encourages, or requests such other person to commit it; or
> (ii) Aids or agrees to aid such other person in planning or committing it.

RCW 9A.08.020(3)(a). Note that the statute employs verbs that describe actions preceding the crime, not conduct that helps the offender after he or she commits the crime. When one assists or prompts the offender to perpetrate the crime, one is not guilty of any crime called aiding and abetting, but instead guilty of the same crime committed by the offending principal.

Assisting an offender after completion of the crime constitutes a distinct crime. *State v. Anderson*, 63 Wn. App. 257, 261 (1991). The accessory after the fact does not

8

garner accomplice liability for the crime committed by the offender.  Under Washington

law, one instead commits the crime of rendering criminal assistance when:

> As used in RCW 9A.76.070, 9A.76.080, and 9A.76.090, a person "renders criminal assistance" if, *with intent to prevent, hinder, or delay the apprehension* or prosecution of another person who he or she knows has committed a crime . . . , he or she:
> (1) Harbors or conceals such person; or
> (2) Warns such person of impending discovery or apprehension; or
> (3) *Provides such person with* money, *transportation*, disguise, or other means of avoiding discovery or apprehension; or
> (4) Prevents or obstructs, by use of force, deception, or threat, anyone from performing an act that might aid in the discovery or apprehension of such person; or
> (5) Conceals, alters, or destroys any physical evidence that might aid in the discovery or apprehension of such person; or
> (6) Provides such person with a weapon.

RCW 9A.76.050 (emphasis added).  The statute incorporates verbs that reference conduct

after completion of the crime.

The legislature enacted RCW 9A.76.050 as part of the adoption of the current

criminal code in 1975.  LAWS of 1975, 1st Ex. Sess., ch. 260, § 9A.76.050.  The crime of

rendering criminal assistance replaced the then-existing concept of serving as an

accessory after the fact.  *State v. Budik*, 173 Wn.2d 727, 736, 272 P.3d 816 (2012); 13A

SETH A. FINE & DOUGLAS J. EDNE, WASHINGTON PRACTICE: CRIMINAL LAW § 1801, at

366 (2d ed. 1998); LAWS of 1975, 1st Ex. Sess., ch. 260.  The State charged Laurel

Hanley with accomplice liability for burglary and theft, not with the distinct crime of

rendering criminal assistance.

Completion of Crimes

Because of the distinction between accomplice liability and rendering criminal assistance after the fact, we move to pinpoint when "after the fact" begins. We address the time at which Kimberly Parsley respectively completed the crimes of second degree burglary and third degree theft.

*second degree burglary*

Three statutes govern second degree burglary. RCW 9A.52.030 declares:

> A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building other than a vehicle or a dwelling.

In turn,

> A person "enters or remains unlawfully" in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain.

RCW 9A.52.010 (2). RCW 9A.52.010(3) reads:

> "Premises" includes any building, dwelling, structure used for commercial aquaculture, or any real property.

The accused need not commit a crime inside the trespassed building. The defendant need only enter a building with the intent to commit a crime to be guilty of burglary. *State v. Brown*, 25 Wn. App. 2d 634, 641, 528 P.3d 370 (2023).

When Kimberly Parsley entered the barn with the intent of stealing any object, she performed the first step necessary to commit the crime of second degree burglary.

10

Parsley engaged in a continuing crime until she exited the barn, at which time she

completed the crime. The State presented no evidence that Laurel Hanley encouraged the

crime before Parsley left the building.

*third degree theft*

We review two statutes delimiting the crime of third degree theft. RCW

9A.56.050(1) asserts:

> A person is guilty of theft in the third degree if he or she commits
> theft of property or services which (a) does not exceed seven hundred fifty
> dollars in value.

In turn, RCW 9A.56.020(1)(a) expresses:

> (1) "Theft" means:
> (a) To wrongfully obtain or exert unauthorized control over the
> property . . . of another . . . with intent to deprive him or her of such
> property.

The defendant commits theft when she exerts control over an item absent permission of

one who holds an interest in the item. *State v. Jacobson*, 74 Wn. App. 715, 719, 876 P.2d

916 (1994).

In *State v. Britten*, 46 Wn. App. 571, 731 P.2d 508 (1986), the State charged Paul

Roger Britten with third degree theft for taking jeans from a store. Britten argued on

appeal that insufficient evidence supported his conviction because the State did not

establish that he completed the crime of third degree theft. The State only proved that he

attempted the crime. A Bon Marche security guard found Britten in a dressing room

wearing five pairs of Bon pants under his own pants. Britten had removed the price tags from the pants before accomplishing the physics defying feat of adorning six pairs of pants. Britten argued he did not commit theft because he had not departed the store or even the dressing room when caught. This court concluded that Britten had wrongfully obtained or exerted unauthorized control over the property belonging to the store by the time of his apprehension. Britten's removal of the tags and donning of the pants conflicted with the store's ownership of the jeans.

Kimberly Parsley wrongfully appropriated or assumed unauthorized control over the Britschgi father's military coat when she removed the uniform from its hanger on the barn wall and traveled toward the exit of the building.

### Sufficiency of Evidence

We have laid the foundation needed to intelligently confront Laurel Hanley's assignment of error based on insufficient evidence to convict her of accomplice liability resulting from Kimberly Parsley's second degree burglary and third degree theft. Due process requires that the State prove each element of a crime charged beyond a reasonable doubt. *State v. O'Hara*, 167 Wn.2d 91, 105, 217 P.3d 756 (2009). When reviewing a challenge to the sufficiency of the evidence, this court views the evidence in the light most favorable to the State and will affirm a defendant's conviction if any rational jury could have found the essential elements of the crime charged beyond a reasonable doubt. *State v. Finch*, 137 Wn.2d 792, 835, 975 P.2d 967 (1999); *State v.*

12

*Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficiency admits the truth of the State's evidence and all inferences reasonably drawn therefrom. *State v. Salinas*, 119 Wn.2d 192, 201 (1992). We defer to the finder of fact on issues of witness credibility, conflicting testimony, and the persuasiveness of the evidence. *State v. Andrews*, 172 Wn. App. 703, 707, 293 P.3d 1203 (2013); *State v. Davis*, 182 Wn.2d 222, 227, 340 P.3d 820 (2014).

Circumstantial evidence holds the same probative value as direct evidence. *State v. Sprague*, 16 Wn. App. 2d 213, 233, 480 P.3d 471 (2021). Courts in this state follow the federal rule that circumstantial evidence need only be sufficient to convict a reasonable jury of guilt beyond a reasonable doubt. *State v. Zunker*, 112 Wn. App. 130, 135, 48 P.3d 344 (2002).

Under an accomplice liability theory, the State must prove the substantive crime was committed and the accused acted with knowledge that he or she was aiding in the commission of the offense. *State v. Lazcano*, 188 Wn. App. 338, 363, 354 P.3d 233 (2015). The defendant must possess knowledge that her actions will promote or facilitate the particular crime. *State v. Bauer*, 180 Wn.2d 929, 943, 329 P.3d 67 (2014); *State v. Luna*, 71 Wn. App. 755, 760, 862 P.2d 620 (1993).

Mere presence with knowledge of the criminal activity does not support a finding of accomplice liability, but one aids by being present and ready to assist. *State v. Truong*, 168 Wn. App. 529, 541, 277 P.3d 74 (2012); *State v. Collins*, 76 Wn. App. 496, 501–02,

886 P.2d 243 (1995). Knowing assistance of another in the commission of a crime is a predicate for accomplice liability. *In the Matter of the Welfare of Wilson*, 91 Wn.2d 487, 492, 588 P.2d 1161 (1979); *State v. D.H.*, 31 Wn. App. 454, 459, 643 P.2d 457 (1982). A defendant is not guilty as an accomplice unless he has associated with and participated in the venture as something he wished to happen and which he sought by his acts to make succeed. *State v. J–R Distributors, Inc.,* 82 Wn.2d 584, 593, 512 P.2d 1049 (1973); *State v. Luna*, 71 Wn. App. 755, 759 (1993).

Even if one's presence could be deemed encouragement to commit a crime, the law does not deem this mold of encouragement sufficient. *In the Matter of the Welfare of Wilson*, 91 Wn.2d 487, 492 (1979); *State v. D.H.*, 31 Wn. App. 454, 459 (1982). Assent to the crime, without more, also does not impose accomplice liability. *State v. Hoffman*, 116 Wn.2d 51, 104, 804 P.2d 577 (1991); *State v. Martinez*, 105 Wn. App. 775, 786 (2001).

We review Washington case law to assist in resolving whether the State presented sufficient evidence to convict Laurel Hanley with accomplice liability. *In the Matter of the Welfare of Wilson*, 91 Wn.2d 487 (1979) serves as the lead Washington Supreme Court opinion on accomplice liability. A group of boys fashioned a rope, tied the rope around a tree, and strung the rope across a road to a golf course fairway. Some of the boys occasionally pulled the rope taut across the road. The State charged the boys with reckless endangerment despite the boys dropping the rope before a car reached it. Ronald

Wilson stood near his friends as they engaged in this mischief. The juvenile court

convicted Wilson based on accomplice liability. The juvenile court reasoned that Wilson

had rendered support and encouragement to the other boys by his presence. Wilson had

contributed to the atmosphere of tomfoolery. Wilson should have left the scene after he

saw the misconduct of his friends. The Court of Appeals summarily affirmed Wilson's

conviction.

The Supreme Court reversed Ronald Wilson's conviction. The court applied the

rule that mere presence does not suffice. The court reasoned that, even though a

bystander's presence alone may encourage the principal actor in his criminal or

delinquent conduct, the presence does not render the bystander a participant in the guilt.

The court wrote:

> It is not the circumstance of "encouragement" in itself that is
> determinative, rather it is encouragement plus the intent of the bystander to
> encourage that constitutes abetting. We hold that something more than
> presence alone plus knowledge of ongoing activity must be shown to
> establish the intent requisite to finding Wilson to be an accomplice in this
> instance.

*In the Matter of the Welfare of Wilson*, 91 Wn.2d 487, 492 (1979).

Oodles of Washington Court of Appeals decisions discuss accomplice liability,

some of which decisions contain parallel facts. In *State v. Anderson*, 63 Wn. App. 257

(1991), Rodney Anderson was acquitted of first degree robbery but convicted of

rendering criminal assistance in the first degree. Anderson and Mark Wilson arrived at a

15

tavern in a car driven by Anderson. Wilson, while Anderson remained in the car, entered a nearby store and robbed the clerk while displaying a toy gun that looked real. Wilson rushed back to the car and told Anderson he had robbed the store. Anderson drove the car from the tavern. Later, when a law enforcement officer stopped the car, Anderson admitted he knew that Wilson committed a robbery but he lacked advance knowledge of Wilson's intent to do so. On appeal, Anderson argued he could not even be convicted of first degree rendering criminal assistance because he lacked knowledge in advance that Wilson possessed a toy gun. Thus, the decision's legal discussion lacks relevance, but the acquittal on the charge of accomplice liability bolsters Laurel Hanley's assignment of error.

In *State v. Luna*, 71 Wn. App. 755 (1993), Armondo Terrill Luna appealed his conviction as an accomplice for taking a motor vehicle without permission. Luna and a group of boys engaged in vehicle prowling. The group began the evening in a white Camaro driven by Chris Lauriton. Lauriton stopped the Camaro, exited, and walked away. Luna and other occupants also departed the Camaro, but stood near the car. Suddenly, a red pickup truck, driven by Lauriton, sped past the group. The other boys returned to the Camaro, with Luna driving, and followed the truck onto the freeway, where the truck pulled onto the shoulder. Lauriton got out of the truck and back behind the wheel of the Camaro, while Luna moved to the back seat. Darrick Brown replaced Lauriton as the driver of the truck. Brown drove the truck recklessly and damaged it.

16

Chris Lauriton had stolen the red pickup truck. Armondo Luna admitted he knew, by the time he drove the Camaro and followed the pickup, that Lauriton had stolen the pickup. The juvenile court reasoned that Luna assisted in stealing the truck and convicted him as an accomplice for theft of a truck.

In *State v. Luna*, this court reversed the conviction of Armando Luna. No evidence showed that Luna knew that Chris Lauriton intended to steal a truck before the theft occurred. Luna's following the truck in the Camaro did not promote or facilitate the theft since the theft had been completed earlier. Luna transported Darrick Brown to the location where Brown transferred to and drove the truck. But the State possessed no evidence that Luna knew Brown would drive the truck until Brown did so.

In *State v. Robinson*, 73 Wn. App. 851, 872 P.2d 43 (1994), this court also reversed, for insufficient evidence, a juvenile's conviction based on accomplice liability. Chima Robinson drove his mother's car with three friends in the back seat and James Baker in the front passenger seat. Robinson reached an intersection and stopped the car at a red light. When the light turned green, Robinson slowly proceeded through the intersection. Without warning, Baker opened the front passenger door and jumped out of the car. The door remained opened. Robinson pulled the car over to the side of the road. Robinson could see Baker with a girl, and they looked like they were struggling. Baker grabbed the purse of the girl, took the purse back to the car, and sat again in the passenger seat. Robinson saw the purse and panicked. He concluded he could not abandon his

17

friend Baker, so he drove the car. He told Baker he was stupid for what he had done and demanded Baker remove the purse from the car. Baker threw the purse out the window. Robinson later dropped Baker at a friend's house and did not report the incident to the police.

On appeal, the State argued that James Baker did not finish his theft of the purse until Chima Robinson helped him escape from the scene. This court agreed with Robinson that, assuming Robinson committed any crime, he committed rendering criminal assistance, for which the State did not charge him. Robinson had not participated in the theft. Baker's taking of the purse ended before he returned to the car.

In *State v. Martinez*, 105 Wn. App. 775, 786 (2001), this court reversed a conviction of accomplice to possession of a cocaine with the intent to deliver. Law enforcement arranged a controlled buy with Christopher Tate being the assigned purchaser of the drug. Tate arranged for his supplier, Ramon Gomez, to deliver the cocaine to Tate's apartment building. Gomez arrived at the apartment complex as a passenger in a car driven by Rafael Martinez. Law enforcement officers met Gomez and searched both Gomez and Martinez. Police found an ounce of cocaine in Gomez's pocket and $279 in cash on Martinez. Martinez carried no drugs. The record held no evidence that Martinez had participated in any criminal activity of Gomez. The State presented no admissible evidence that Martinez knew Gomez to bear any drugs. This

court applied the rule that mere presence at the scene, even with assent to criminal activity, did not create accomplice liability.

*State v. Asaeli*, 150 Wn. App. 543, 208 P.3d 1136 (2009), arises from a shooting death occurring during a confrontation between two rival youthful groups. The State charged the shooter and two of his colleagues with varying degrees of murder. The two colleagues denied any formal association with the shooter. They also denied any knowledge that the shooter carried a gun or intended to assault any member of a rival organization. This court reversed the conviction of Darius Vaielua, one of the colleagues. This court agreed that the State provided insufficient evidence that Vaielua, despite his connections to the shooter, knew of or participated in any plan to assault a rival. Thus, the court applied the rule that mere presence does not prove complicity in a crime. Vaielua had even driven the shooter to the location of the killing and knew that some members of his unstructured organization intended to confront the decedent.

During the prosecution of Laurel Hanley, the evidence established that Kimberly Parsley traveled to the property using Hanley's car. Hanley sat in the passenger seat. The State presented no evidence that Hanley knew in advance of Parsley's intent to steal. The State presented no evidence of Hanley possessing knowledge of Parsley having committed any earlier crime, let alone burglary or theft. Trial testimony failed to even establish that Hanley knew to where Parsley wished to drive the car before the two

19

arrived at the Britschgi property. The State unearthed no conversations between Hanley and Parsley leading to the crimes.

The State suggests that Laurel Hanley must have known, in advance of Kimberly Parsley driving the Ford Focus, that Parsley intended to go to the Britschgi property and enter a building without permission. One typically does not allow an acquaintance to borrow one's car and then ride in the car without knowing the destination and the purpose of the trip. But a similar comment could be said about Darius Vaielua driving Benjamin Asaeli to a gathering of youth groups or Rafael Gomez driving Ramon Gomez to a drug sale.

Laurel Hanley never testified to any understanding about Kimberly Parsley's reason for entering the Britschgi property contrary to burglarizing the home or barn. Rafael Gomez and Darius Vaielua also did not testify to any understanding about the purpose of each's ferrying the principal to a crime. Requiring Hanley to assume the burden of producing evidence of her anticipation of a legal purpose for entering the Britschgi land borders on improperly shifting the burden of proof to Hanley.

Laurel Hanley stayed in the Ford Focus while Kimberly Parsley knocked on the backdoor of the Britschgi house. After discovering no one was home, Parsley went to the separate garage and took an army uniform. Parsley brought the uniform back to the car where Hanley sat, and she asked Hanley for access to the trunk. The State never presented testimony that Hanley wished for Parsley to take the military uniform. Parsley

20

did not keep the uniform in Hanley's Ford Focus for long, but instead transferred the coat to the truck in which she rode hours later.

The State emphasized that Laurel Hanley must have answered Kimberly Parsley's question about the means of opening the back of the Focus. Nevertheless, the record does not confirm that Parsley posed this question. Neither the video series nor trial testimony established Hanley's response to Parsley's loutish question.

Even if we concluded that the jury could draw a reasonable inference that Laurel Hanley assisted Kimberly Parsley in opening the back of the car, such inference does not aid the State. Just as James Baker had completed his forcible grabbing of the purse before his returned to Chima Robinson's car, Parsley completed her burglary and theft before she returned to Hanley's car. Assuming Hanley committed a crime, she committed an uncharged crime.

The State asserts, based on the testimony of Detective Michael Gilmore, that Laurel Hanley told Kimberly Parsley that pilfering the uniform was wrong and that she instructed Parsley not to steal the uniform. The video snippets do not confirm that Hanley uttered these words. Regardless, assuming Hanley spoke disapproval to Parsley, the utterances bolster Hanley's position. The remarks would confirm that Hanley gave no encouragement to Parsley before Parsley completed the crimes. Any permission to use Hanley's Ford Focus thereafter to leave the Britschgi property lacks relevance.

The State forwards *State v. Clark*, 190 Wn. App. 736, 361 P.3d 168 (2015) to support Laurel Hanley's convictions. This court, in *Clark*, concluded that the State presented sufficient evidence to convict Nathaniel Clark of being an accomplice to an attempted bank robbery and a successful bank robbery. Clark had earlier known that John Reynolds stole a phone at a T-Mobile store. Clark also knew that Reynolds had earlier robbed a bank. Reynolds gave Clark some of the ill-gotten funds. Clark later acted as the getaway driver for a second bank robbery. The State presented evidence that Clark parked down the street from the bank with the engine running. Clark did not park in the available spaces near the bank. After exiting the bank, Reynolds ran to the car and entered the car while wearing black clothing, gloves, sunglasses, and carrying a bag. Clark drove away with the tires squealing. The cell phone that Reynolds stole earlier from the T-Mobile Store and the cell phone registered to Clark lay in the same location as an attempted bank robbery and a later successful robbery. The stolen phone and Clark's phone communicated at the same time during the attempted and accomplished robberies.

We adjudge the Washington decisions we have already discussed more apt in resolving Laurel Hanley's appeal than *State v. Clark*. No evidence suggests that Hanley knew of any criminal history of Kimberly Parsley. Hanley did not drive a getaway car. Hanley did not follow Parsley from one crime to the next crime.

No. 39216-3-III,
*State v. Hanley*

CONCLUSIONS

We vacate Laurel Hanley's convictions for second degree burglary and third

degree theft and remand for dismissal of the charges. A ruling by an appellate court that

the State presented insufficient evidence requires dismissal of the prosecution with

prejudice. *State v. Asaeli*, 150 Wn. App. 543, 570 (2009).

_____
Fearing, J.

WE CONCUR:


_____
Lawrence-Berrey, C.J.

_____
Pennell, J.

23